UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RAMON LOPEZ,

Petitioner,

v.

PAT L. VAZQUEZ, Warden,

Respondent.

Case No.:  16cv2612-BTM-MDD

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

## I.    INTRODUCTION

This Report and Recommendation is submitted to United States District Judge Barry T. Moskowitz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Ramon Lopez ("Petitioner"), a state prisoner proceeding *pro se*, seeks federal habeas relief from a felony conviction for six counts of committing lewd acts on a child under the age of fourteen (Cal. Penal Code § 288(a); counts 3, 4, and 7-10).  (ECF Nos. 1, 5 at 1; Lodg. No. 1 at 235).  After reviewing the Petition [ECF No. 1], Respondent's Answer and Memorandum

of Points and Authorities in support thereof ("Answer") [ECF No. 5], Petitioner's Traverse [ECF No. 10] and pertinent state court lodgments, the Court **RECOMMENDS** Petitioner's federal Petition for Writ of Habeas Corpus be **DENIED**.

## II.   <u>FACTUAL BACKGROUND</u>

### A.   State Proceedings

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (overruled on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that federal courts are required to "give great deference to the state court's factual findings.")). Accordingly, the following facts are taken from the California Court of Appeal's May 23, 2016, opinion in *People v. Ramon Lopez*, Appeal No. D066988. (*See* Lodg. No. 5).

A
*Prosecution Case*
1

When J.F. was 10 years old and in fifth grade, her stepfather, [Petitioner], began to touch the top of her thighs over her clothes. He would do this when J.F. was home alone with him while she was either in her bed or working on her laptop. [Petitioner] touched J.F. every weekend when he was drinking from the time she was 10 years old, in 2010, until April 2013 when J.F. and her mother no longer lived with him. This occurred at least 10 times and made her feel uncomfortable. Sometimes he would sit on the bed next to her and rub her thighs. She stated it was not a pat on the leg like a brother or grandfather would do, but more like grabbing. [Petitioner] would rub her thigh back and forth for a few minutes each time. He would do this when he was drunk. When he was not drinking, [Petitioner] was nice and was like a father to her. J.F. did not like it when he would drink because he would touch her.

2

J.F. did not tell her mother because she was worried her mother would get sick or mad. Her mother has diabetes and blood pressure problems. She gets sick if she is mad, worried or if something bad happens.

J.F. saw [Petitioner] touch her sister, M.F., when they were going to the beach. [Petitioner] grabbed M.F.'s thighs and held her hand. This occurred after [Petitioner] started touching J.F. M.F. told J.F. to be careful because [Petitioner] would touch M.F. and it made her uncomfortable. J.F. did not tell M.F. [Petitioner] had touched her because she did not want anyone to find out.

In May 2013, J.F. told a friend at school [Petitioner] was touching her and making her uncomfortable. The friend told other girls and the school counselor, which made J.F. angry. J.F. was sent to the counselor, who called the police. J.F. told the police she felt uncomfortable when [Petitioner] touched her thighs. A social worker from Child Welfare Services also came to the school and J.F. told her what happened. When J.F.'s mother arrived, the social worker told her mother [Petitioner] had been touching J.F.'s thighs and chest. J.F. was scared her mother would not believe her. J.F.'s mother became sad and they moved out of the house. The news affected J.F.'s mother's health.

2

[Petitioner] was like a father to M.F. when he first married her mother. When M.F. was eight years old and in third grade, [Petitioner] started touching her in a way that made her uncomfortable. The first time was a holiday party in 2004. She was dancing with her mother and [Petitioner], who were drinking. When her mother took a break to go to the restroom, [Petitioner] asked M.F. to dance. While they danced, he started tickling her. He then put his hand under her shirt and squeezed her breast. M.F. backed away and went to the restroom, but she did not tell her mother because her mother was drunk. The next day [Petitioner] said, "You don't remember nothing, right, from yesterday?" M.F. took this as a threat and acted as though nothing happened.

Thereafter, [Petitioner] touched M.F. every weekend when he drank from the time she was eight years old until she was 16 years

old, at which time she had a boyfriend and moved out of the house. [Petitioner] touched, squeezed, and rubbed her inner and outer thigh.  He would touch her when no one else was at home.  He touched her while they were sitting on the couch or driving in the car on the way to her school bus stop.  If she told him to stop, he would get mad.  He touched her breasts more than once, but less than he touched her thighs.  When she would wash the dishes, he would come up behind her, put his arm over her shoulder, reach under her shirt, and touch the top part of her breast or chest.  He would also kiss her neck or back.  He touched her breast or chest and thighs multiple times when she was under the age of 14.

When [Petitioner] would drive her to the school bus stop, he would tell her he loved her and he was going to kidnap her and take her to Mexico when she turned 15 years old.  He said he wanted to marry her and give her roses.  M.F. did not tell her mother because [Petitioner] threatened her by saying it would be her fault if her mother got sick.  He also said if she "snitch[ed] on him" she knew where his gun was.

During M.F.'s testimony, [Petitioner] spoke out in Spanish to M.F. and held up an iPhone with a picture.  The court admonished [Petitioner] not to disrupt the proceedings or intimidate the witnesses.  [Petitioner] later testified he held up a picture of M.F.'s mother and asked M.F. if she did not love her mother.  He stated he was sad and was reminding M.F. about her mother and her mother's health.

The mother of J.F. and M.F. denied anyone told her [Petitioner] had been touching M.F.  She said she learned in 2013 from a social worker at J.F.'s school.

## B

### Defense Case

J.F. told the police officer who interviewed her at school that she was approximately 10 years old when [Petitioner] began touching her.  She stated he placed his hands on her thighs over her clothing and moved his hands up and down across her leg touching the inner part of the thigh on the top.  She stated he also patted or rubbed her chest area.  She stated [Petitioner] kissed her on the neck a few days before, which made her uncomfortable.  She said

16cv2612-BTM-MDD

[Petitioner] did not touch her when he was not drinking.  She said she was not afraid of [Petitioner], but wanted him to stop touching her.

[Petitioner's] nieces testified they attended family functions with [Petitioner] and saw him drink alcohol and interact with other family members.  They described him as respectful, nice, helpful, and fun to be around.  He never touched them or made them feel uncomfortable.   They never saw him touch J.F. or M.F. inappropriately.  He treated them as if he were his daughters.

[Petitioner] testified on his own behalf.  He stated he thought of M.F. and J.F. as his own daughters.  His relationship with M.F. was good at the beginning, but her behavior changed around age 10 or 11.  She would not listen and was rebellious.  She did not want to go to school.  He would drive her to the bus stop or to school.  He denied telling her he was going to take her to Mexico or make her his bride.  He denied touching her thigh inappropriately.  He denied telling her he loved her in a romantic way or touching her in a sexual way.  He denied touching her breast or inner thigh or kissing her.  He loved both girls as his own family members.

[Petitioner] stated he had a good relationship with J.F. and was closer to her than he was to M.F.  He referred to J.F. as his "little princess."  He stated he put cream on her chest when she had trouble with asthma.  He would hug and kiss her on the cheek or the forehead, but denied touching J.F. in a sexual way.

(Lodg. No. 5 at 3-7) (footnotes omitted).

A jury convicted Petitioner of two counts (counts 3 and 4) of committing a lewd act upon J.F. by touching her thigh and four counts (counts 7-10) of committing a lewd act upon M.F. by touching her thigh, kissing the back of her neck and touching her chest in violation of California Penal Code § 288(a).  (*Id.* at 5; Lodg. No. 1 at 184-85, 188-91).

Petitioner appealed from the trial court's judgment, raising two issues: (1) there was insufficient evidence to support his convictions for counts 3 and

16cv2612-BTM-MDD

4 regarding J.F.; and (2) jury instruction CALCRIM NO. 1110 as given was argumentative and requires reversal.  (*See id.* at 2; *see also* Lodg. No. 3 at 12-27).  The Court of Appeal affirmed the trial court's judgment.  (Lodg. No. 5 at 2, 13).

On June 7, 2016, Petitioner petitioned the California Supreme Court for review of the Court of Appeal's May 23, 2016, opinion.  (Lodg. No. 6).  Petitioner raised two arguments: (1) there was insufficient evidence to support his convictions for counts 3 and 4 regarding J.F.; and (2) jury instruction CALCRIM No. 1110 as given was argumentative and requires reversal.  (*Id.* at 3-14)  On July 27, 2016, the California Supreme Court denied Petitioner's petition for review.  (Lodg. No. 7).

Petitioner did not seek collateral review in the state courts.  (*See* Lodg. Nos. 1-7).

**B.    Federal Proceedings**

On October 19, 2016, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 1).  Petitioner raises two grounds for relief: (1) there was insufficient evidence to support his convictions for counts 3 and 4 regarding J.F.; and (2) jury instruction CALCRIM NO. 1110 as given was argumentative and requires reversal.  (*Id.* at 6-8).

On December 16, 2016, Petitioner constructively filed a motion for voluntary dismissal of his Petition on the ground that his claims were unexhausted.  (ECF No. 8).  On December 27, 2016, Respondent filed an Answer.  (ECF No. 5).  In the Answer, Respondent admitted that Petitioner exhausted all of his state court remedies.  (*Id.*).  On January 3, 2017, Chief District Judge Moskowitz accepted Petitioner's motion for voluntary dismissal on discrepancy.  (ECF No. 7).  On January 17, 2017, Chief District

Judge Moskowitz denied Petitioner's motion because Respondent admitted exhaustion.  (ECF No. 9).  On January 30, 2017, Petitioner filed a Traverse. (ECF No. 10).

## III.  <u>STANDARD OF REVIEW</u>

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh*, 521 U.S. 320. Title 28, U.S.C. § 2254(a) provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States.

Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . . ."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

from [the Court's] precedent." *Id*. at 405. A state court decision does not have to demonstrate an awareness of clearly established Supreme Court precedent, provided neither the reasoning nor the result of the state court decision contradict such precedent. *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S.Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id*. at 76; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119-22 (2007).

Federal courts review the last reasoned decision from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991); *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). In deciding a state prisoner's habeas

petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  The petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement. . . ." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (citation omitted).  It is not within a federal habeas court's province "to reexamine state court determinations on state-law questions. . . ." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

## IV.   DISCUSSION

### A.   Claim 1: Insufficient Evidence

Petitioner argues that "there is insufficient evidence to support Petitioner's convictions for lewd acts upon [J.F.] because the alleged conduct is too equivocal to prove Petitioner acted with sexual intent." (ECF No. 1 at 6).  Petitioner explains that "[a]n essential element of lewd conduct with a child is a touching which is accompanied by ***an intent to arouse*** or gratify sexual desires of either the perpetrator or the child" and there is "no evidence whatsoever establishing [P]etitioner acted with the intent to become sexually aroused." (*Id.* at 7) (emphasis in original).

### 1.   State Court Opinion

Petitioner presented this claim to the state appellate and supreme courts on direct review.  (Lodg. Nos. 3, 6).  The appellate court denied Petitioner's claim on the merits and the California Supreme Court summarily denied the petition without a statement of reasoning or citation to authority.  (Lodg. Nos. 5 at 7-10; 7).  Accordingly, this Court must "look through" to the

state appellate court's opinion denying the claim as the basis for authority. *Ylst*, 501 U.S. at 805-06.  That court wrote:

> "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of that person or child, is guilty of a felony . . . ." (§ 288, subd. (a).)   A child need not specify the precise date, time, place or circumstance to support a charge for lewd conduct under this section.  "[T]he particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (*People v. Jones* (1990) 51 Cal.3d 294, 315.) A victim's statements provide sufficient evidence to support a conviction under section 288, subdivision (a), if the statements, "describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy).  Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping').  Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period.   Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or the substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones*, at p. 316.)

In this case, J.F. testified [Petitioner] started touching her in a way that made her uncomfortable when she was 10 years old.  He touched and rubbed her upper thighs over her clothes at least 10 times.  She said this occurred when she was alone in her room every weekend over a three-year period from 2010 until 2013 when she no longer lived with him.  The touching was not a pat on the leg, instead [Petitioner] rubbed his hand back and forth on her thigh for a few minutes each time.  He would do this only when he was drunk.

This testimony describes the kind of acts with sufficient specificity to establish the acts occurred and amounted to lewd conduct. (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*) ["a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body"].) It describes the number of acts with sufficient specificity to support counts 3 and 4 for the first and last incidents. It also describes the general time period to establish J.F. was under 14 years old and the acts occurred within the applicable limitations period. This testimony alone is sufficient evidence to support [Petitioner]'s convictions for counts 3 and 4. (*People v. Crow* (1994) 28 Cal.App.4th 440, 446-447.)

In addition, the jury heard evidence of both charged and uncharged lewd acts [Petitioner] committed against J.F.'s sister, M.F. The jury was entitled to consider and infer [Petitioner's] lewd intent from similar conduct he engaged in with M.F. (Evid. Code §§ 1101, subd. (b), 1108; *People v. Cole* (2004) 33 Cal.4th 1158, 1194 [prior conduct similar to the charged offense may "'support the inference that defendant probably harbored the same intent in each instance'"]; *Martinez*, *supra*, 11 Cal.4th at p. 445 ["other acts of lewd conduct admitted or charged in the case" are relevant to determine intent].) The jury was able to consider the difference in [Petitioner's] relationship with the two girls and the fact he was more explicit in stating his intentions to M.F. However, the jury could infer his intentions as to J.F. based on the similarity of conduct. We conclude substantial evidence supports the convictions under counts 3 and 4.

(Lodg. No. 5 at 7-10).

## 2. Summary of Arguments

Petitioner argues that the court of appeal's decision that substantial evidence supports the convictions under counts 3 and 4 were incorrect because "no testimony nor evidence by way of words or actions was presented that [P]etitioner had the requisite ***intent*** to become sexually aroused when he touched the children, let alone that he had actually become aroused." (ECF No. 1 at 7) (emphasis in original). Petitioner contends that "[t]he

16cv2612-BTM-MDD

evidence therefore is insufficient to prove [P]etitioner acted with the specific intent which was an essential element of the charged crimes . . . . [and] the state court's rejection of this argument is contrary to, and an unreasonable application of, controlling United States Supreme Court precedent."[1]  (*Id.*).

Respondent argues that the court of appeal reasonably concluded there was substantial evidence supporting the convictions under counts 3 and 4 because "viewing the evidence presented at trial in the light most favorable to the prosecution and presuming that the jury resolved all conflicting inferences from the evidence against [Petitioner], as reasonably determined by the state court, a rational juror could have found beyond a reasonable doubt that [Petitioner] was guilty of the crimes charged in counts 3 and 4." (ECF No. 5-1 at 9, 11).

### 3.   Legal Standard

The Fourteenth Amendment Due Process Clause protects criminal defendants from convictions "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  In a federal habeas proceeding, a petitioner challenging the sufficiency of the evidence may obtain relief only if "it is found that upon the record evidence adduced at the trial no rational

_____

[1] In his Traverse, Petitioner argues for the first time that California Penal Code § 288(a) is unconstitutionally vague because "[t]he California legislature has not intended to criminalize every knowing or intentional act of touching a child in prohibited areas," but the language of the statute seems to "criminalize every act of touching a child."  (ECF No. 10 at 6).  On October 24, 2016, the Court advised Petitioner that "[g]rounds for relief withheld until the traverse will not be considered."  (ECF No. 2 at 3).  Accordingly, the Court will not consider Petitioner's vagueness argument.

trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). A reversal for insufficiency of the evidence is essentially a "determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988)) (internal quotations omitted).

It is the jury's responsibility "to decide what conclusions should be drawn from evidence admitted at trial" and a reviewing court can set aside a jury verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts" by assuming that the jury resolved all conflicts in support of the verdict. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If the record supports conflicting inferences, the court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

The court applies the standard with specific reference to the applicable state law defining the elements of the crime at issue. *Id.* at 324 n.16; *see also Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*). The reviewing court also applies "an additional layer of deference" under AEDPA:

habeas relief is not warranted unless "the state court's application of the *Jackson* standard [was] 'objectively unreasonable.'" *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 n.13 (9th Cir. 2005) (as amended) (citation omitted); *see Cavazos*, 565 U.S. at 2 ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (citation omitted).

California Penal Code § 288(a) provides, in relevant part: "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony." Cal. Penal Code § 288(a). The California Supreme Court has interpreted § 288(a) as requiring a finding that the defendant intended to arouse either his own sexual desires or those of the child at the time the touching occurred, but that the form, manner or nature of the touching itself need not be lewd. *People v. Martinez*, 11 Cal.4th 434, 442 (1995). "Nothing in [the language of § 288(a)] restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited" and "the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." *Id.* at 442, 444.

Under § 288(a), intent to arouse is determined by viewing the conduct in light of the totality of the circumstances:

> The trier of fact looks to all the circumstances, including the
> charged act, to determine whether it was performed with the

required specific intent . . . [including] the defendant's extrajudicial statements, or other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any coercion, bribery or deceit used to obtain the victim's cooperation or avoid detection.

*Martinez*, 11 Cal.4th at 445 (internal citations and quotation marks omitted).

### 4.    Analysis

Viewing the evidence in the light most favorable to the prosecution, the Court of Appeal's conclusion that sufficient evidence existed to convict Petitioner of California Penal Code § 288(a) in counts 3 and 4 was not an objectively unreasonable application of *Jackson*.

Petitioner testified at trial and denied all allegations of inappropriate touching and that "his interactions with [J.F.] were innocent acts of familial affection common in all familial relationships." (ECF No. 1 at 7; Lodg No. 2 at 462, 466, 469-70).  Petitioner argues that "[o]ther than testifying to have been made to feel 'uncomfortable,' no testimony nor evidence by way of words or actions was presented that [P]etitioner had the requisite **intent** to become sexually aroused when he touched [J.F.], let alone that he had actually become aroused." (ECF No. 1 at 7) (emphasis in original).   Petitioner also noted that his nieces testified that they had never been touched by Petitioner inappropriately and had never seen Petitioner touch J.F. inappropriately. (*Id.*).

J.F. testified that Petitioner was nice to her when they first met after her mother married him.  (Lodg. No. 2 at 144).  When J.F. was 10 years old, Petitioner first touched her in a way that made her feel uncomfortable.  (*Id.* at 145).  She testified that Petitioner touched the top of her thighs above her clothing in J.F.'s bedroom when they were alone and Petitioner was drunk. (*Id.* at 145-46, 149).  J.F. felt uncomfortable "because it wasn't like a pat, like – it was like grabbing.  It just – um, it wasn't the same as if like, my brother

were to do it or like an uncle or grandpa . . . . it just felt different." (*Id.* at 146). J.F. once saw Petitioner grab M.F.'s thigh and hold her hand at the beach. (*Id.* at 158). Later, M.F., J.F.'s older sister, told J.F. that Petitioner had grabbed her thighs and kissed her on the neck. (*Id.* at 159). J.F. was scared, but didn't tell her mother about Petitioner's conduct because she was worried her mother, who has diabetes, would get sick or mad if her blood pressure went up. (*Id.* at 154, 159).

M.F. testified that when she was eight years old and in the third grade, Petitioner started touching her in a way that made her feel uncomfortable. (*Id.* at 276-77). The first time Petitioner touched her, M.F. was dancing with him and her mother at a holiday party. (*Id.* at 278). M.F.'s mother went to the restroom and Petitioner continued to dance with M.F. (*Id.* at 279). Petitioner started tickling M.F. and then put his hand under her shirt and squeezed her breast for three to five seconds. (*Id.*). The next day, Petitioner told M.F. "You don't remember nothing, right, from yesterday?" (*Id.* at 281). M.F. took this as a threat. (*Id.*).

M.F. testified that, from thereon Petitioner touched her every weekend when he was drunk until she turned sixteen. (*Id.* at 281, 283). Petitioner squeezed and rubbed her outer and inner thigh above her clothes hundreds of times over the eight years. (*Id.* at 283-85). M.F. testified that Petitioner would get mad when she told him to stop. (*Id.* at 283). Petitioner also touched M.F.'s chest and breast above her clothes for approximately ten seconds, but he did this less times than he touched her thighs. (*Id.* at 284-85). M.F. testified that Petitioner placed his hand down her shirt to touch her breast while she was washing dishes and kiss her neck or back more than twice, but less than ten times. (*Id.* at 286-87).

M.F. also testified that Petitioner told her he loved her and would

kidnap her when she turned fifteen and take her to Mexico.  (*Id.* at 290).

M.F. testified that Petitioner threatened her by telling her "that if [M.F's] mom would get sick, it was going to be [M.F.'s] fault, or if [M.F.] snitch[es] on [Petitioner], [M.F.] already knew where his gun was at."  (*Id.* at 291).

The jury was persuaded that Petitioner's testimony was less credible than J.F's and M.F.'s testimony.  The Court can overrule the jury's determination only if no rational trier of fact could have agreed with the jury. *Cavazos*, 535 U.S. at 2.  Given J.F.'s testimony that Petitioner rubbed J.F's thighs in a way that made J.F. uncomfortable every weekend for three years, there was sufficient evidence for a rational trier of fact to conclude that Petitioner touched J.F. with the requisite intent.  Further, the jury was permitted to consider M.F.'s testimony that Petitioner touched her breast or chest and thighs several times over an 8 year time-frame as circumstantial evidence of Petitioner's intent while touching J.F.  *See Martinez*, 11 Cal.4th at 445.

The evidence viewed in the light most favorable to the prosecution demonstrated that Petitioner had lewd intent because under these circumstances, a rational trier of fact could conclude that Petitioner intended to arouse himself or J.F.  *See Abhyankar v. Yates*, No. SACV 09-00696-JST (MLG), 2011 WL 3359671, *25 (C.D. Cal. Apr. 20, 2011) (finding sufficient evidence of intent to arouse where there was non-genital touching because the jury could consider other victims' testimony in light of the totality of the circumstances); *see also Camero v. Salazar*, No. 1:05-cv-00034 ALA (HC), 2008 WL 4104247, *7-8 (E.D. Cal. Sept. 3, 2008) (finding sufficient evidence of intent to arouse where the touching was not "inherently lewd" and the jury was persuaded that the victim's testimony was credible and demonstrated the petitioner's lewd intent).  Accordingly, the Court **RECOMMENDS** that

1    Petitioner's sufficiency of the evidence claim be **DENIED**.

2    **B.    Claim 2: Jury Instruction Error**

3    Petitioner argues "the trial court committed prejudicial error in using

4    CALCRIM No. 1110 because the instruction as given was impermissibly

5    argumentative and duplicative." (ECF No. 1 at 8). Petitioner contends that a

6    portion of CALCRIM No. 1110 prejudiced Petitioner because it "worked to

7    emphasize facts the prosecution was not required to prove and acted to cause

8    confusion among the jury as to the prosecution's burden." (*Id.*). Specifically,

9    Petitioner states that the following statement was "impermissible and

10   prejudicial: 'Actually arousing, appealing to, or gratifying the lust, passions,

11   or sexual desires of the perpetrator or the child is not required.'" (*Id.*).

12   **1.    State Court Opinion**

13   Petitioner also presented this claim to the state appellate and supreme

14   courts on direct review. (Lodg. Nos. 3, 6). The appellate court denied

15   Petitioner's claim on the merits. (Lodg. No. 5 at 10-13). The California

16   Supreme Court summarily denied the petition without a statement of

17   reasoning or citation to authority. (Lodg. No. 7). Accordingly, this Court

18   must again "look through" to the state appellate court's opinion denying this

19   claim. *Ylst*, 501 U.S. at 805-06. That court wrote:

20       Section 288, subdivision (a), defines the lewd act offense as
21       committed when a person (1) "willfully and lewdly commits any
         lewd or lascivious act" upon the body of a child under age 14, and
22       (2) "with the intent of arousing, appealing to, or gratifying the lust,
         passions, or sexual desires of that person or the child." CALCRIM
23       No. 1110 sets for the touching and the intent elements and then
24       clarifies various elements of the offense, including the intent
         element. Given its ordinary meaning, the sexual intent element
25       could be construed to require actual sexual arousal. However, it is
26       well established actual sexual arousal is not an element of the
         offense. (*People v. Cordray* (1963) 221 Cal.App.2d 589, 593 [""It is

27

18

16cv2612-BTM-MDD

not necessary to show that . . . sexual desires . . . were actually affected, since the gist of the crime is the intent and not its accomplishment.""']; *People v. McCurdy* (1923) 60 Cal.App. 499, 502 [whether the acts have the effect of arousing passions or sexual desires is immaterial].)

The language [Petitioner] complains about from the pattern jury instruction is a correct statement of the law and provides appropriate clarifying information to assist the jury. The instruction given to the jury in this case did not focus on specific items of evidence in an argumentative fashion nor did it duplicate the elements to be proven. Therefore, we conclude the trial court did not err in instructing the jury with CALCRIM No. 1110.

Additionally, even if there were error, there is no indication the jury applied the instruction in an impermissible manner or was confused or distracted about the People's burden. To the contrary, the record shows the jury carefully considered the evidence and the law. The jury acquitted [Petitioner] on counts 5 and 6 as to alleged victim A.H. and could not reach a verdict as to counts 1 and 2 regarding whether or not [Petitioner] touched J.F's breast or chest. Accordingly, we conclude any error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jennings* (2010) 50 Cal.4th 616, 676-677.)

(Lodg. No. 5 at 10-13).

## 2. Summary of Arguments

Petitioner argues that CALCRIM No. 1110 "relieve[s] the prosecution of the burden of proving beyond a reasonable doubt" the intent element of § 288(a), is "impermissibly argumentative," is duplicative and confused the jury. (ECF Nos. 1 at 8; 10 at 7).

Respondent argues that "[t]his claim does not present a federal question," but that "[i]n any event, the state court's rejection of the claim was not contrary to or an unreasonable application of Supreme Court authority." (ECF No. 5-1 at 12). Specifically, Respondent contends that CALCRIM No.

1110 did not have a substantial and injurious effect on his verdict, and
therefore, Petitioner is not entitled to habeas relief.  (*Id.* at 13).

### 3.    **Legal Standard**

A jury instruction violates due process if it fails to give effect to the
requirement that "the State must prove every element of the offense."
*Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (*per curiam*).  Further, a jury
instruction violates due process only if "the ailing instruction by itself so
infected the entire trial that the resulting conviction violates due process."
*Estelle*, 502 U.S. at 72 (quotation omitted).  In evaluating an instructional
error claim, the challenged instruction "'may not be judged in artificial
isolation,' but must be considered in the context of the instructions as a whole
and the trial record."  *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147
(1973)).  Petitioner must also prove that the alleged instruction error "had
substantial and injurious effect or influence in determining the jury's
verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The elements of a state crime are determined by state law and federal
courts are bound by state courts' interpretation of their own statutes.  *See
Chein, 373 F.3d at 983*; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)
("[A] state court's interpretation of state law, including one announced on
direct appeal of the challenged conviction, binds a federal court sitting in
habeas corpus."); *Stanton v. Benzler*, 146 F.3d 726, 729 (9th Cir. 1998) (state
courts' interpretation of an element of an offense is not open to challenge on
habeas review).  Petitioner challenges his conviction under California Penal
Code § 288(a), which states:

> Except as provided in subdivision (i), any person who willfully and
> lewdly commits any lewd or lascivious act, including any of the acts
> constituting other crimes provided for in Part 1, upon or with the
> body, or any part or member thereof, of a child who is under the age

of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 288(a).  Pursuant to CALCRIM No. 1110, the jury was instructed as follows:

> The defendant is charged in Counts 1 through 10 with committing a lewd or lasvicious act on a child under the age of 14 years of age in violation of Penal Code section 288(a).
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> > 1.  The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;
> > 2.   The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;
> > and
> > 3.  The child was under the age of 14 years old at the time of the act.
>
> Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
>
> Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required.
>
> It is not a defense that the child may have consented to the act.
>
> Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun.

(Lodg. No. 1 at 171-72).

### 4.    Analysis

The California Court of Appeal's determination of Petitioner's

instructional error claim was not contrary to or an unreasonable application of clearly established federal law.  Petitioner claims his constitutional rights were violated because CALCRIM No. 1110 negated an element of the offense from the jury's consideration, was duplicative and argumentative.  (ECF Nos. 1 at 8; 10 at 7).  The California Court of Appeal found that CALCRIM No. 1110 comports with California Penal Code § 288 and properly stated California law.  (Lodg. No. 5 at 12).  This Court is bound by the California Court of Appeal's interpretation of California Penal Code § 288.  *See Bradshaw*, 546 U.S. at 76; *Stanton*, 146 F.3d at 729.  Accordingly, CALCRIM No. 1110 did not impermissibly relieve the prosecution of its burden to prove every element of the crime beyond a reasonable doubt, is not argumentative and is not duplicative.  *See Reyes v. Muniz*, No. CV 15-0909 AG (RAO), 2016 U.S. Dist. LEXIS 102795, *16-18 (C.D. Cal. May 20, 2016) (finding CALCRIM No. 1110 does not lower the prosecution's burden of proving every element of a crime beyond a reasonable doubt and is not impermissibly argumentative and duplicative).

Further, the jury was instructed that the prosecution bears the burden of proving guilt beyond a reasonable doubt, that each element of the charged crime must be proved, that Petitioner must be found not guilty if the evidence does not prove his guilt beyond a reasonable doubt and that the prosecution must prove Petitioner committed the acts charged with a particular intent. (Lodg. Nos. 1 at 15-160, 163, 171-174; 2 at 496-515).  In totality, the jury instructions clarified to the jury that the prosecution had the burden of proving each element of the crime beyond a reasonable doubt.  *See Bruce v. Terhune*, 376 F.3d 950, 955-56 (9th Cir. 2004).

For the reasons stated herein, this Court **RECOMMENDS** that Petitioner's instruction error claim regarding CALCRIM No. 1110 be

16cv2612-BTM-MDD

**DENIED**.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **March 31, 2017**, any party to this action may file written objections with this Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 7, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:   March 9, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

16cv2612-BTM-MDD